IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DYNAMIC DRYWALL, INC.,

     Plaintiff,

v.                                                          Case No. 6:15-CV-1229-JTM

McPHERSON CONTRACTORS, INC. and
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,

     Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on a Motion to Intervene filed by Legacy Bank on

September 23, 2015. (Dkt. 8).  Responses were due from all parties on October 7, 2015.  On

October 9, 2015, defendant McPherson Contractors, Inc. notified the court that it would not be

filing a response.  At the time of the filing of this Memorandum and Order, no responses from

any other party have been received.  As explained below, Legacy Bank's Motion to Intervene is

granted.

### I.      Factual and Procedural History

Defendant McPherson Contractors, Inc. ("McPherson") was the general contractor on a

school renovation project for the Blue Valley School District in Johnson County, Kansas.

McPherson, as the principal, and defendant Fidelity and Deposit Company of Maryland

("Fidelity"), as the surety, executed a statutory payment bond on the project under Kan. Stat.

Ann. §60-1110 (2005).  On June 14, 2014, plaintiff Dynamic Drywall, Inc. ("DDI") entered into

a subcontract with McPherson to provide labor and materials for the drywall and ceiling

components of the project for the contract sum of $707,510.  The subcontract provided for an April 11, 2014, project completion date.  McPherson has its office in Topeka and DDI is located in Wichita.

On May 21, 2014, DDI filed a chapter 11 petition in the United States Bankruptcy Court for the District of Kansas and, to date, remains a debtor-in-possession.  In DDI's list of assets filed in the bankruptcy (Schedule B), it scheduled accounts receivable in excess of $3.5 million, comprising nearly all of DDI's assets and including a sizeable receivable allegedly owed by McPherson.  On January 9, 2015, DDI filed this adversary proceeding against McPherson and Fidelity alleging non-payment under the subcontract.  Neither McPherson nor Fidelity is a creditor in DDI's bankruptcy case.  Neither defendant has filed a proof of claim or otherwise submitted themselves to the jurisdiction of the Bankruptcy Court.

DDI asserts three causes of action.  Against Fidelity, it alleges that as an intended beneficiary, DDI is entitled to recover under the Kansas statutory payment bond its unpaid materials and labor of $519,144.19 provided on the project.  Against McPherson, DDI seeks damages of $519,144.19 for breach of the subcontract by failing to pay for labor and materials provided.  DDI seeks additional damages of $98,873.12 for McPherson's alleged conversion of miscellaneous equipment belonging to DDI, measured by the value of the equipment at the time of conversion.  Defendants filed answers to the complaint, admitting execution of the subcontract and payment bond, but otherwise denying the claims and disputing liability to DDI.  Defendants made demand for a jury trial on all of the claims.  This adversary proceeding is in the early stages of discovery, the scheduling order having just been entered in June 2015.

On April 30, 2015, Judge Nugent conducted a scheduling conference pursuant to FED. R. CIV. P. 26(f).  At that time, Judge Nugent granted defendants until May 21, 2015, to file a motion

to withdraw the reference, which defendants did on that date.  Defendants allege that all of DDI's claims are state law legal claims subject to trial by jury, which defendants have timely demanded.  Defendants also expressly withheld their consent to that trial being conducted by a bankruptcy judge.

On August 11, 2015, this court adopted Judge Nugent's Report and Recommendation, which concluded that (1) all of DDI's claims are non-core state law claims, including the state law conversion claim that DDI sought to have categorized as a turnover claim; (2) all of DDI's claims are legal causes of action for which there is a right to a jury trial; and (3) both defendants made timely jury trial demands, and are entitled to have that trial conducted in the district court. Dkt 2.  Judge Nugent further concluded that neither defendant filed a statement of consent to have a bankruptcy judge conduct a jury trial or enter a final order or judgment on the non-core state law claims.  Accordingly, the court granted defendants' Motion to Withdraw Reference (Dkt. 6).

On September 23, 2015, Legacy Bank ("Legacy") filed a Motion to Intervene alleging an interest relating to property owned by DDI which was improperly taken by defendant McPherson and is the subject matter of the current cause of action.  Dkt. 8.  More specifically, Legacy asserted that a Security Agreement was signed by plaintiff on June 27, 2012, and again on August 30, 2013.  Dkt. 8-1.  The Security Agreement pledged all equipment of DDI.  *See* Dkt. 8-2 (containing a list of all included equipment).  Legacy therefore seeks to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2).

## II.    Legal Standard

Federal Rule of Civil Procedure 24(a) delineates a non-statutory right to intervene:

On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action

and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In the Tenth Circuit, intervening parties are not required to show independent Article III standing, "so long as another party with constitutional standing on the same side as the intervener remains in the case." *San Juan Cty., Utah v. U.S.*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc).

All intervention motions must be timely. Because there is no definition of timeliness stated in Rule 24(a), such determination is left to the judge's sound discretion. *Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 5 (10th Cir. 1968).

> The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances. The analysis is contextual; absolute measures of timeliness should be ignored. The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention where no one would be hurt and greater justice could be attained.

*Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (internal citations omitted).

Once a motion has been deemed timely, a judge must allow intervention under Rule 24(a)(2) when the proposed intervenor "(1) has an interest relating to the property or transaction underlying the case whose (2) rights would be impeded or impaired by disposition of the case and (3) whose rights are inadequately represented by the existing parties." *Bowers v. Mortg. Elec. Registration Sys.*, 2011 U.S. Dist. LEXIS 85033, at *7 (D. Kan. Aug. 3, 2011). This is not a "mechanical rule" with "rigid, technical requirements." *Id*. (quoting *San Juan Cty.*, 503 F.3d at 1195). Rather, "[e]fficiency and fairness dictate that a movant should be allowed to intervene if it will be substantially affected by the outcome." *Id*. As such, courts are "somewhat liberal"

(*WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) in allowing intervention as a matter of right, because the elements of the rule are "flexible, practical, interdependent, and heavily fact-specific." *Bowers*, 2011 U.S. Dist. LEXIS 85033, at *7 (quoting *San Juan Cty.*, 503 F.3d at 1195-96).

### III.    Discussion

One method of determining timeliness is whether the parties have commenced discovery. *Bowers*, 2011 U.S. Dist. LEXIS 85033, at *6 (citing *Wyandotte Nation v. City of Kan. City, Kan.*, 200 F. Supp. 2d 1279, 1287 (D. Kan. 2002)).  This court recently granted the parties' agreed upon Motion to Extend Discovery and Litigation Deadlines well into 2016.  Dkt. 10. Accordingly, the court finds Legacy's motion to be timely.

Whether a movant has an interest relating to the property or transaction involves a broad inquiry, assessing only "the practical effect of the litigation" on the movant's interest. *Id*. at *7-8 (citing *San Juan Cty.*, 503 F.3d at 1193).  The assessment is intended to be inclusive, so as to involve "as many apparently concerned persons as is compatible with efficiency." *Id*. at *8 (quoting *San Juan Cty.*, 503 F.3d at 1195).  "Therefore, the movant's relationship with the *subject* of the action is determinative, not its relationship with the *issues* before the court." *Id*. (citing *WildEarth Guardians*, 604 F.3d at 1198) (emphasis in *Bowers*).

Here, as noted above, Legacy entered into a Security Agreement with plaintiff on June 27, 2012, and again on August 30, 2013.  Dkt. 8-1.  This Agreement pledged all equipment of DDI, including such items as tank compressors, saws, scaffolds, and trailers.  Dkt. 8-2.  Legacy claims that it continues to hold a valid security interest in the subject equipment because the interest was not terminated by defendant McPherson's possession of the same, as defendant

McPherson was not a good faith purchaser for value.  Dkt. 8, ¶ 4.  The court therefore finds that Legacy has an interest relating to the property or transaction.

"Whether the movant's interest may be impaired by the litigation is a minimal burden, requiring a showing only that denial of intervention could possibly impair a legal interest." *Bowers*, 2011 U.S. Dist. LEXIS 85033, at *8-9 (citing *WildEarth Guardians*, 604 F.3d at 1199). The court may consider any legal impairment.  *Id*. at *9 (internal citation omitted).  The court finds that, absent intervention, Legacy's rights are substantially impeded in this matter, given its security interest in the subject equipment and the alleged improper conversion by defendant McPherson of that equipment.

Moreover, given that Legacy's interests and rights in the equipment are separate from the rights of plaintiff, the court finds that, absent intervention, Legacy's interests are not adequately protected by plaintiff.

**IT IS THEREFORE ORDERED** this 19th day of October, 2015, that Legacy Bank's Motion to Intervene (Dkt. 8) is hereby **GRANTED**.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE